AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of California

<table>
<tr><td>United States of America</td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Marvin Mutch</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td><i>Defendant(s)</i></td><td></td></tr>
</table>

Case No.  2:25-mj-0122 AC

**FILED**

**Aug 29, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 22, 2025_____ in the county of _____Solano_____ in the _____Eastern_____ District of _____California_____ , the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of ammunition |
| 18 U.S.C. § 2252(a)(4) | Possession of child pornography |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Carla Ceccon.

☒  Continued on the attached sheet.

/s/ Carla Ceccon
*Complainant's signature*

Carla Ceccon, FBI Special Agent
*Printed name and title*

Sworn telephonically, pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:  _____August 29, 2025_____

City and state:  _____Sacramento, California_____

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Carla Ceccon, being duly sworn, hereby depose and state as follows:

### I.     <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.     I am a Special Agent of the Federal Bureau of Investigation (the "FBI"), and have been since September 2018. I am currently assigned to the FBI's Sacramento Division. Prior to being assigned to the Sacramento Division, I was assigned to the San Francisco Division and served on the Santa Clara County Safe Streets Gang Task Force.

2.     As a Special Agent of the FBI, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer charged with executing arrest and search warrants under the authority of the United States.

3.     My training consisted of twenty-one weeks of New Agent Training classes, during which I received instruction on various aspects of criminal and national security investigations. As part of my training, I received extensive instruction in the areas of criminal law; firearms; rules of evidence; interview techniques; physical surveillance; working with confidential informants; writing affidavits; executing search warrants; analyzing phone records obtained from subpoenas, search warrants, pen registers, and trap and trace devices; and collecting and processing evidence. In addition, I received specialized training in firearms technology, narcotics and gang investigations, investigations into crimes committed against children, human trafficking investigations, and methods and practices for extracting data from digital devices.

4.     Throughout my career, and as part of my participation in this investigation, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators. Additionally, based on my training and experience and on facts I know from working with organizations such as the National Center for Missing and Exploited Children, I am familiar with the locations where many of the most commonly possessed and traded series of child sexual abuse material ("CSAM," sometimes referred to as "child pornography") were originally produced.

5.      Prior to my employment as an FBI Special Agent, I was employed by the Sacramento Police Department for approximately three years. I attended the Sacramento Police Academy for my basic training to become a police officer, which consisted of approximately 980 hours of training. From December 2015 through May 2018, I was assigned to the Office of Operations as a patrol officer working both uniform and plain clothes patrol. During this assignment, I conducted, as well as participated in, hundreds of investigations including crimes of homicide, robbery, weapons violations, sexual assaults, and various gang- and narcotics-related offenses. As a police officer, I conducted no less than 100 vehicle, probation, and parole searches of people, residences and personal property, resulting in numerous arrests for a variety of criminal statutes. Prior to my employment as a police officer, I was employed by the Colusa County Probation Department as a Deputy Probation Officer for approximately two years. As a Deputy Probation Officer, I participated in hundreds of probation searches of people, residences and personal property.

6.      In concert with the Solano County Sheriff's Office, I am investigating suspected criminal activity committed in Solano County by an individual named Marvin Mutch. Based on the facts contained in this affidavit that I have learned and developed during this investigation, I submit that there is probable cause to believe that on or about May 23, 2025, in Solano County, California, Mutch was a felon in possession of ammunition and CSAM, in violation of 18 U.S.C. §§ 922(g)(1) and 2252(a)(4)(B), respectively. Accordingly, I make this affidavit in support of a criminal complaint and accompanying arrest warrant for Mutch.

7.      The facts and information in this affidavit are based on my personal knowledge, my training and experience, information I learned from other law enforcement officers and witnesses, and review of various documents and records. Furthermore, this affidavit does not contain all the facts known to me about the ongoing law enforcement investigation of Mutch.

## II.      FACTS ESTABLISHING PROBABLE CAUSE

8.      In or around the spring of 2024, the National Center for Missing and Exploited Children received a CyberTipline report from Google indicating that some of its online services

AFFIDAVIT                                          2

had been used to possess or transmit CSAM. The Google account associated with this CyberTipline report was linked to a number of Internet Protocol ("IP") addresses from which it accessed the internet, and also was associated with the following identifiers:

      a)      Name: Marvin Mutch

      b)      Mobile phone number: (510) 851-2592

      c)      Mobile phone number: (415) 328-4076

      d)      Email address: marvinmutch@gmail.com

      e)      Email address: marvinmutch56@gmail.com.

9.      Based on further investigation, law enforcement officers determined that Mutch was associated with these email addresses and contact numbers, and that the IP addresses from which this Google account accessed the internet resolved to a residence at 1208 Amador Street in Vallejo, California.

10.      In or around May 2025, officers conducted surveillance of 1208 Amador Street and observed Mutch park a Cadillac vehicle inside the garage attached to that residence and enter the house. The license plate on this Cadillac was "MUTCHR." Subsequent review of records maintained by the California Department of Motor Vehicles revealed that this vehicle is registered in Mutch's name.

11.      On or about May 23, 2025, law enforcement officers executed a search warrant at 1208 Amador Street in Vallejo. This search warrant authorized officers to search for and seize evidence relating to various violations of the California Penal Code, including section 311.3 (sexual exploitation of a child) and section 311.11 (possession of matter depicting sexual conduct of a person under eighteen). Officers encountered three individuals inside the residence when they executed the search warrant, each of whom appeared to reside there: Mutch, Mutch's wife, and Mutch's daughter.

///

///

///

AFFIDAVIT

3

**A.      Officers Seized CSAM From Mutch's Residence.**

12.      Officers executing this search warrant seized a number of electronic devices from a residential office located in the rear of the house at 1208 Amador Street. This office contained a large amount of rocks and other materials suggesting that its owner has an interest in geology.

13.      Subsequent forensic examination of the devices seized from this residential office revealed that they contained CSAM. As just one example, an external USB drive seized from a drawer of the desk inside this office contained a file named "QMoGGLhK.S.webp," which depicts an adult male wearing no pants, sitting on top of a bed and inserting his erect penis into the vagina of a prepubescent girl who is approximately three or four years old.

14.      Forensic examination of these devices also revealed numerous indicators that they belonged exclusively to Mutch. For example, officers observed the following items saved to the same thumb drives where they located CSAM:

a)      Mutch's professional résumé;

b)      Public articles written by Mutch that the owner of the devices appears to have saved for archival purposes;

c)      Numerous "selfie"-type photographs depicting Mutch with various community and civic leaders; and

d)      Little to no indication that the thumb drives belonged to anyone else (such as, for example, photographs including Mutch's wife or daughter).

15.      Across all the electronic devices seized during execution of this search warrant, law enforcement officers located hundreds of media files containing CSAM. Many of these files depict girls ranging in age from two to eight years old being sexually assaulted in a variety of ways. At least one of the CSAM files extracted from these devices was from the "Vicky" series of CSAM, which was produced in the state of Washington.

///

///

///

AFFIDAVIT                                                    4

**B.      Officers Seized Ammunition From Mutch's Vehicle.**

16.      Inside a Cadillac vehicle parked in the garage of this same residence with a license plate displaying "MUTCHR," officers seized an unserialized Glock-style Polymer80 firearm (*i.e.*, a "ghost gun").

17.      When it was seized, this firearm was loaded with eight rounds of Remington ammunition. Remington ammunition is manufactured only in Arkansas or Connecticut.

**C.      Statements to Officers**

18.      While officers executed this search warrant, Mutch gave a statement after receiving *Miranda* warnings that consisted of the following (in summary):

a)      Mutch lived inside the residence with his wife and daughter;

b)      One of the email addresses and one of the phone numbers listed on the CyberTipline report generated by Google belonged to him;

c)      Mutch denied that the email address marvinmutch56@gmail.com belonged to him;

d)      Mutch was the sole user of the residential office inside the residence;

e)      Mutch was "proud" of his rock collection;

f)      Mutch believed that he had been "hacked" by someone who was trying to ruin his life and who had locked Mutch out of his Google account (Mutch could not identify who this "hacker" might be except to say that it was likely a former coworker of Mutch's whose first name was "Dimitry");

g)      Mutch and his wife devoted significant time and resources toward tracking down the people who purportedly "hacked" his accounts, and Mutch identified computer logs on his electronic devices that appear to show various programs on those devices conducting what he believed to be unauthorized computer commands;

h)      Mutch frequently backed up his phones to various thumb drives in order to preserve their logs as an anti-hacking approach;

i)      Mutch had never viewed or seen CSAM in his life;

AFFIDAVIT                                                  5

j)      Mutch possessed the ghost gun, but only did so for a short time because he took it from a drug-addicted friend for safekeeping;

k)      Mutch knew that his criminal history made it illegal for him to possess firearms; and

l)      Mutch intended to turn the ghost gun in to law enforcement at an upcoming gun buyback program in San Francisco.

19.    Mutch's daughter also gave a statement to law enforcement officers while they were executing the search warrant. In summary, Mutch's daughter told officers the following:

a)      She had been living in Mutch's house for the past year and stays in the front living room area of the residence;

b)      She owns a laptop and a cellular phone,[1] and does not share any Google accounts with members of her family;

c)      She does not know anything about Mutch's computer work;

d)      No one else resides in the house; and

e)      She knows that in or around 2022, Mutch was "hacked."

20.    Based on my own training and experience as well as on my discussions with other law enforcement officers trained in computer forensics techniques and "ethical hacking," I believe that it is extremely unlikely that Mutch's computer accounts or devices were actually compromised. I believe this for numerous reasons, including the following:

a)      The type of "hack" Mutch believed he suffered (*i.e.*, breaching multiple cellular phones, computers, and external storage devices such as USB drives) is called a "polymorphic" intrusion and is almost certainly beyond the sophistication level of even state-affiliated actors such as foreign security agencies from Russia, China, and the like;

b)      Mutch provided no indication during his interview with law enforcement officers that any "hackers" had victimized him in ways that one would expect to see in a

---

[1] Both of these devices were located on the residence's kitchen table when officers arrived at the Amador Street residence to execute the search warrant.

AFFIDAVIT                                                6

true computer compromise situation, such as by emptying his financial accounts or stealing his identity;

　　　　c)　　Mutch's explanation for why he believed "hackers" to be in control of his devices (primarily, indications in his device logs that he believed to be computer code executing commands without Mutch's direction or approval) is consistent with the normal operation of computer programs performing regular software updates; and

　　　　d)　　Mutch made statements during his interview indicating that he is a relatively unsophisticated computer user (for example, he could not articulate a difference between various basic types of IP addresses) who is unlikely to be able to identify if his electronic devices had truly been compromised.

**D.　　Mutch Was Previously Convicted of Murder.**

21.　　In 1975, Mutch was convicted of murdering a thirteen-year-old girl in Alameda County Superior Court. The victim of this crime was found dead along Alameda Creek in Union City, California, with press reports suggesting she had been beaten and drowned.

22.　　Following his conviction, Mutch was sentenced to serve an indeterminate term of seven years to life in a California state prison for this offense. Mutch was granted parole in or around 2016 and released from parole in or around 2019.

**III.　　CONCLUSION AND REQUESTS**

23.　　On the basis of the above information, I submit that there is probable cause to believe that Mutch possessed ammunition as well as depictions of the sexual exploitation of children. I therefore request that a criminal complaint and accompanying arrest warrant be issued for Marvin Mutch for violating 18 U.S.C. §§ 922(g)(1) and 2252(a)(4).

///

///

///

///

///

AFFIDAVIT

7

24.     I further request that the Court issue an order sealing the criminal complaint, arrest warrant, and accompanying application materials until Mutch is arrested by federal law enforcement agents. Mutch is currently not in law enforcement custody, and the premature exposure of this affidavit and accompanying application prior to his anticipated arrest could jeopardize law enforcement's investigation by giving Mutch the chance to flee.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Respectfully submitted,

/s/ Carla Ceccon
CARLA CECCON
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me telephonically on:      August 29, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/s SAM STEFANKI
Approved as to form by AUSAs SAM STEFANKI and
ADRIAN KINSELLA

AFFIDAVIT                                                  8

**United States v. Marvin Mutch**
**Penalties for Criminal Complaint**

**Charge One**

VIOLATION:     18 U.S.C. § 922(g)(1) – Felon in Possession of Ammunition

PENALTIES:     Up to fifteen (15) years in prison; or
Fine of up to $250,000; or both fine and imprisonment;
Supervised release of up to three (3) years.

SPECIAL ASSESSMENT:    $100 (mandatory), pursuant to 18 U.S.C. § 3013.


**Charge Two**

VIOLATION:     18 U.S.C. § 2252(a)(4) – Possession of Child Pornography

PENALTIES:     Up to twenty (20) years in prison, if the offense involved a prepubescent
minor or a minor who had not attained the age of eighteen (18) years; or
Fine of up to $250,000; or both fine and imprisonment;
Supervised release of at least five (5) years and up to life.

SPECIAL ASSESSMENTS:
$100 (mandatory), pursuant to 18 U.S.C. § 3013;
$5,000 if the defendant is non-indigent, pursuant to 18 U.S.C. § 3014(a)(3);
Up to $17,000, pursuant to 18 U.S.C. § 2259A(a)(1).